T.C. Memo. 1996-498

UNITED STATES TAX COURT

STEVEN J. AND MICHELE D. SCAGLIOTTA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 107-95.                       Filed November 6, 1996.

Steven J. Scagliotta, pro se.

<u>Peter M. Kardel</u>, for petitioner Michele D. Scagliotta.

<u>James A. Whitten</u>, for respondent.

MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1]    Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year at issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $6,741 in petitioners' 1990 Federal income tax and an accuracy-related penalty of $1,348.20 under section 6662(a).

The issues for decision are: (1) Whether petitioners are entitled to deductions under section 162(a) for expenses incurred from a real estate development and marketing activity of Steven J. Scagliotta (petitioner); (2) whether petitioners are entitled to a business bad debt deduction under section 166(a) for the year at issue; and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for negligence or disregard of rules or regulations.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Bridgewater, New Jersey.

In 1982, petitioner developed a strategy for trading on the commodity futures market. He documented his strategy, which relies on various charting methods, in a manual that he intended to market to the public. Petitioner began an operation using the trade name Commodity Investment Strategists (CIS) to effectuate this activity. Petitioner sold some of his manuals in the early 1980's but overall did not have much success in marketing his trading strategy. He, thereafter, discontinued this activity and sold the manual in only isolated and incidental situations. No

income or expenses are attributable to this activity for the year at issue.

Petitioner, thereafter, started a real estate development and marketing activity using the same CIS trade name. He envisioned purchasing parcels of real estate, developing such property for residential use by building, for sale, luxury "build to suit" homes that would be constructed by petitioner on the real estate. In 1983 and 1986, petitioner purchased two vacant lots located at Bridgewater, New Jersey (Bridgewater property), and Clinton/Readington, New Jersey (Clinton property), for such development. With respect to the Bridgewater property, although the record is not clear, it appears that, as of 1990, the year at issue, petitioner had never obtained a building permit for that property. However, petitioner, thereafter, obtained a permit to build a single family home on the Bridgewater lot and, in 1992, secured a $175,000 loan for the purposes of building and selling a house on the property. The house has never been built. With respect to the Clinton property, petitioner obtained a building permit shortly after the purchase of the property and, in 1988, "secured plans on houses" that he wanted to build for potential buyers. This entailed designing home floor plans with the help of builders and engineers, determining a reasonable cost and profit for each house plan, listing the property for sale on a "build to suit" basis, and obtaining financing. Since 1989,

petitioner has listed the Clinton property for sale on a "build to suit" basis with different realtors but to no avail.  To date, no house has been built on the Clinton property.  Petitioner continues owning both properties.

During the 1980's and early 1990's, petitioner also began another real estate activity unrelated to the Bridgewater and Clinton properties.  Petitioner purchased, during that time, 50-percent interests in three rental properties located at Knoxville, Tennessee, at the following addresses:  1365 Armstrong Avenue and 1000 and 1006 Thompson Place.  The other 50-percent interest in these properties was owned by Cabell J. Marshall (Ms. Marshall), a real estate professional from the State of Georgia.[2] Petitioner and Ms. Marshall also purchased, along with a third individual, George Mitchell, interests of one-third each in real property located at 1503 Coker Avenue, Knoxville, Tennessee. Additionally, Ms. Marshall independently owned rental real estate located at 1424 Armstrong Avenue, Knoxville, Tennessee.  All of these properties were located in an older section of Knoxville and consisted of large old homes that had been renovated and converted into rental units by the owners.  The rental office for all of these properties was located at the 1424 Armstrong Avenue

---

[2]    The record in this case does not indicate how petitioner came to know Ms. Marshall, or how they became involved in purchasing rental real estate together.  Ms. Marshall was an attorney and was admitted to the Georgia State Bar.

address.  The properties in which petitioner owned interests were rented out.

On July 2, 1987, petitioner lent $38,000 to Ms. Marshall. This loan, which had a rate of interest of 12 percent per annum, was secured by Ms. Marshall's interests in the three Knoxville properties in which she and petitioner each owned 50-percent interests.  Of the $38,000 lent, approximately $17,000 was used by Ms. Marshall for her share of the downpayment on the purchase of her one-half interest in the property located at 1365 Armstrong Avenue.  The remaining $21,000 was used by Ms. Marshall to avoid foreclosure of the property she owned at 1424 Armstrong Avenue.  Since the rental office was located at that address and potential tenants saw this property first, petitioner considered the 1424 Armstrong Avenue property to be the "anchor" or "showcase" for the remainder of the rental real estate he had interests in.  Accordingly, he wanted to avoid foreclosure of that property and, therefore, agreed to the use of the $21,000 by Ms. Marshall on this property.

In June 1990, petitioner advanced $4,962.95 to Ms. Marshall for the purpose of paying the mortgage creditors on the 1000 Thompson Place property the monthly mortgage payments from January through May 1990, which Ms. Marshall had not paid.  Ms. Marshall failed to remit the $4,962.95 to the mortgage creditors, and petitioner made the payment himself to the creditors.

Petitioner claims an indebtedness of $4,962.95 owing to him by Ms. Marshall arising from these two transactions.[3]  Shortly after, on July 17, 1990, petitioner lent $10,000 to Ms. Marshall for her share of a payment to the mortgage creditors on the 1000 Thompson Place property.  Both the $4,962.95 and the $10,000 advances were unsecured obligations.

To date, Ms. Marshall has not made any payments on the $38,000, the $10,000, and the $4,962.95 loans made to her by petitioner.  On August 6, 1990, Ms. Marshall filed a petition for relief with the U.S. Bankruptcy Court for the Southern District of Georgia, Savannah Division (Bankruptcy Court), under chapter 11 of the U.S. Bankruptcy Code.  By order dated April 30, 1992, the Bankruptcy Court decreed that petitioner held unsecured claims of $10,000 and $4,962.95 against Ms. Marshall arising out of the transactions described above.  As to the $38,000 loan, the

---

[3]     The record is confusing as to how $4,962.95 is determined to be the amount due petitioner.  Since petitioner and Ms. Marshall each owned a one-half interest in the 1000 Thompson Place property, Ms. Marshall's share of the liability for the delinquent mortgage payments would have been $2,481.47 (one-half of $4,962.95).  Since petitioner advanced $4,962.95, one-half of this amount, or $2,481.47, would be considered as a debt owing to petitioner by Ms. Marshall.  Thereafter, when petitioner paid the $4,962.95 directly to the mortgage creditors, that entire amount would be considered as a debt owing by Ms. Marshall to petitioner.  Thus, it appears to the Court that these events would indicate an indebtedness of $7,444.42 owing by Ms. Marshall to petitioner ($2,481.47 plus $4,962.95).  The Court surmises that an accounting of some sort occurred between petitioner and Ms. Marshall so that the indebtedness owing by her to petitioner was fixed at $4,962.95.

Bankruptcy Court decreed that petitioner held a secured claim of $18,913.02 against Ms. Marshall. Even though Ms. Marshall had made no payments on the $38,000 loan, the Bankruptcy Court found that, in the informal agreement between petitioner and Ms. Marshall in their ownership of the subject properties, each party was to make equal contributions of money and labor and that labor provided by a coowner would be valued at $7 to $10 per hour. The Bankruptcy Court found that Ms. Marshall had provided excess labor to the properties that accounted for reduction of the indebtedness from $38,000 to $18,913.02. In total, the Bankruptcy Court decreed Ms. Marshall's indebtedness to petitioner to be $33,875.97 based upon the following:

| | |
|---|---:|
| Loan on July 2, 1987 | $38,000.00 |
| Loan on July 17, 1990 | 10,000.00 |
| Jan. through May 1990 mortgage payments | 4,962.95 |
| Total loans and advances (exclusive of interest) | 52,962.95 |
| Less credit on the $38,000 indebtedness | (19,086.98) |
| Net indebtedness | $33,875.97 |

The Bankruptcy Court ordered a sale of the properties owned by Ms. Marshall, including the four properties in which petitioner owned undivided interests. Of the net proceeds from the sale of these properties, petitioner received $17,756 for his interests in the properties. With respect to Ms. Marshall's interests in the properties, $17,756 was turned over to the bankruptcy trustee to be held for distribution to the creditors of the bankruptcy estate. As of trial of this case, petitioner had not received

any amount out of these proceeds to be applied to his claims against the estate.

During 1990, petitioner was employed on a full-time basis with United Energy Services Corp. doing work in the field of information systems. He reported salary and wage income of $74,154.61 from his employer for 1990.

On their 1990 Federal income tax return, petitioners reported on Schedule C, Profit or Loss from Business, income of zero, expenses of $37,726, and a net loss of $37,726 from CIS. Included in the amount of expenses claimed was a business bad debt deduction of $12,500 representing a portion of the $52,962.95 loans and advances by petitioner to Ms. Marshall. Petitioner included the bad debt deduction on Schedule C for CIS because he contends that CIS is a business that includes both his non-rental-related activities, with respect to the Bridgewater and Clinton properties, and his rental-related activities, with respect to the property he and Ms. Marshall owned in Knoxville. However, petitioners reported the rental income and other expenses from the properties in Knoxville on Schedules E, Supplemental Income and Loss, of their 1990 Federal income tax return.

In the notice of deficiency, respondent disallowed all of the expenses claimed by petitioners on Schedule C of their 1990 return. Respondent determined that petitioners were not entitled

to deduct the $12,500 business bad debt expense because petitioners had not established that the debt became worthless in 1990, nor had petitioners proven that the debt was a business bad debt such that a partial amount of the debt could be deducted under section 166(a)(2). Respondent determined that the remaining expenses of $25,226 claimed on Schedule C were not allowable because petitioners had not established that petitioner's real estate development and marketing activity constituted a trade or business under section 162. Alternatively, respondent determined that, if petitioner's activity did constitute a trade or business, the expenses represented startup expenses that should have been capitalized under section 195 pursuant to an appropriate election by petitioners. Substantiation of the expenses claimed by petitioners is not at issue.[4] Respondent made no adjustments to the Schedule E rental income and expenses reported by petitioners.

---

[4] In the notice of deficiency, $12,710.29 and $548, respectively, for mortgage interest expenses and real estate taxes that were disallowed as trade or business expenses were allowed as itemized Schedule A deductions. The mortgage interest expense of $12,710.29, which related to the Bridgewater and Clinton properties, was treated as investment interest under sec. 163(d)(3), and, after applying the limitation of sec. 163(d), $5,348 was allowed as a deduction for 1990, with the remainder allowed as a carryforward of disallowed interest under sec. 163(d)(2). Respondent further allowed petitioners an itemized deduction of $1,389 for State income taxes and disallowed the standard deduction of $5,450 claimed by petitioners on their 1990 return.

During the trial, petitioners orally moved to amend their pleadings to conform with the evidence to increase the amount of their business bad debt deduction from $12,500 to $31,650. The Court granted this motion pursuant to Rule 41(b). Petitioner's testimony and the record are not clear as to how petitioner arrived at this figure; however, it appears, and the Court so finds, that the claimed amount of $31,650 represents essentially the amount found by the Bankruptcy Court to be petitioner's claim against Ms. Marshall, $33,875.97.

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Deductions are a matter of legislative grace and "'only as there is clear provision therefor can any particular deduction be allowed.'" Deputy v. duPont, 308 U.S. 488, 493 (1940) (quoting New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934)).

The first issue is whether petitioners were engaged in a trade or business during the year 1990 entitling them to a deduction of the expenses claimed on Schedule C of their return (except the business bad debt deduction, which is considered separately). Section 162(a) provides generally that there shall be allowed as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on

any trade or business". The inquiry as to whether a taxpayer is carrying on a trade or business is dependent on the facts and circumstances of each case. Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987).

As indicated in McManus v. Commissioner, T.C. Memo. 1987-457, affd. without published opinion 865 F.2d 255 (4th Cir. 1988), three criteria are generally accepted as indicative of carrying on a trade or business. First, the taxpayer must undertake an activity intending to make a profit. Second, the taxpayer must be regularly and actively involved in the activity. Third, the taxpayer's business operations must actually have commenced.

In the present case, although petitioner did not present any documentary evidence to show that he could realistically make a profit in conducting his real estate development and marketing activity, the Court is satisfied that petitioner did intend to make a profit in the activity. Petitioner has met his burden of proving that the first criterion set forth in McManus v. Commissioner, supra, has been met. The Court, however, is not satisfied that the second and third criteria set forth in McManus have been met with respect to petitioner's real estate development and marketing activity. While petitioner purchased property, obtained building permits, designed floor plans with the help of builders and engineers, and listed the property for

sale, petitioner, to date, has not accomplished the main purpose of his activity; i.e. to construct and sell for profit a luxury "build to suit" home.  As stated in Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated per curiam on other grounds 382 U.S. 68 (1965):

> even though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not "engaged in carrying on any trade or business" within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized. [Fn. ref. omitted.]

Thus, "carrying on a trade or business" requires a showing of more than initial research into business potential and solicitation of potential customers or clients.  Dean v. Commissioner, 56 T.C. 895, 902 (1971).  Further, "carrying on a trade or business" also requires more than identifying, contacting, and agreeing with potential partners, contractors, or other business personnel.  Richmond Television Corp. v. United States, supra at 907.  The business operations must actually have commenced to satisfy the third of the criteria noted above. Courts have consistently held that preopening and startup expenses are not deductible under section 162(a).

Based on the case law cited above, petitioner's actions in connection with his New Jersey properties did not rise to the

level of carrying on a trade or business for purposes of section 162. The expenses incurred by petitioner in his real estate development and marketing activity are, at most, startup costs and/or organizational expenses. See sec. 195. Petitioner's activity never actually commenced. McManus v. Commissioner, supra. Further, petitioner failed to show the activity was conducted on a regular and continuous basis. Id. The majority of the actions taken by petitioner described above were in 1988. During 1990, the year at issue, the record indicates that petitioner merely listed the Clinton property for sale.[5] Petitioner contends that he spent approximately 10 to 20 hours per week on his real estate development and marketing activity. However, he did not present any oral testimony or documentary evidence to show how that time was actually spent on the activity. Further, petitioner held a full-time job in the area of information systems during 1990.

On this record, the Court holds that petitioners failed to establish that, during 1990, petitioner's real estate development and marketing activity had actually commenced or was being conducted on a regular and continuous basis. Id. Petitioner failed to prove that he was carrying on a trade or business for purposes of section 162. Accordingly, petitioners are not

---

[5] The Court notes that, by 1990, petitioner had not even secured a building permit for the Bridgewater property.

entitled to deduct, under section 162, the business expenses claimed on Schedule C of their 1990 return. The mortgage interest and real estate taxes paid in 1990 with respect to petitioner's activity are deductible on Schedule A of petitioners' 1990 return, as allowed by respondent in the notice of deficiency. Respondent is sustained on this issue.[6]

The next issue is whether petitioners are entitled to a business bad debt deduction with respect to the loans petitioner made to Ms. Marshall in connection with the Knoxville, Tennessee, properties they jointly owned. Respondent determined that the debt owed to petitioner constituted a nonbusiness bad debt and that the debt did not become worthless in 1990. In general, section 166(a) allows a deduction for any debt that becomes worthless during the taxable year. However, section 166 distinguishes between business bad debts and nonbusiness bad debts. Sec. 166(d); sec. 1.166-5(b), Income Tax Regs. Business bad debts may be deducted against ordinary income to the extent that such debts become wholly or partially worthless during the year. Nonbusiness bad debts may be deducted, but only in the

---

[6] The Court notes that sec. 195 provides generally that no deduction shall be allowed for start-up expenditures; however, such expenses may, at the election of the taxpayer, be treated as deferred expenses and allowed as a deduction prorated equally over a period of not less than 60 months as may be selected by the taxpayer beginning with the month in which the active trade or business begins. This record does not support a finding that a trade or business activity by petitioner began during 1990.

same manner as short-term capital losses, and only if the debts are wholly worthless in the year claimed.  Sec. 166(d); sec. 1.166-5(a)(2), Income Tax Regs.  Section 166(d)(2) provides generally that a "nonbusiness debt" means a debt other than a debt created or acquired in connection with a trade or business of the taxpayer or a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

This Court has concluded above that petitioner was not engaged in a trade or business during 1990.  Moreover, the indebtedness at issue was not incurred in connection with the activity claimed by petitioners to have been a trade or business but rather was incurred in connection with rental properties in Tennessee, the income and expenses from which petitioners reported on Schedule E of their return.  The loans petitioner made to Ms. Marshall were in connection with properties petitioner held for the production or collection of income under section 212 and were not related to or made in connection with a trade or business activity within the intent and meaning of section 162(a).  Thus, petitioners are precluded from claiming a business bad debt deduction.  Additionally, petitioners failed to establish that the indebtedness owing by Ms. Marshall became wholly worthless during 1990 to support a claim for a nonbusiness bad debt deduction.  The record shows that, in Ms. Marshall's bankruptcy proceeding, which was initially filed under chapter 11

of the U.S. Bankruptcy Code and subsequent to the year at issue was converted to a chapter 7 bankruptcy, proceeds of $17,756 were held by the bankruptcy trustee for distribution to the creditors of the bankruptcy estate. None of these proceeds had been distributed at the time of trial of this case. It is likely that petitioner will ultimately receive some amount from the bankruptcy estate to apply to his indebtedness. Petitioner did not have to be "an incorrigible optimist" to anticipate the possibility of a recovery. See United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398, 403 (1927). For the year 1990, the Court holds that petitioner's claim against Ms. Marshall was not wholly worthless, thus precluding a deduction under section 166. Sec. 1.166-5(a)(2), Income Tax Regs.[7] Respondent, therefore, is sustained on this issue.[8]

---

[7] In so holding, the Court recognizes that the bankruptcy trustee has taken the position that petitioner did not have a valid deed of trust on Ms. Marshall's interest in the three Knoxville, Tennessee, properties, and, therefore, petitioner's claim of $18,913.02 (of the original $38,000 loan) was not a secured claim. However, the record further shows that the trustee was willing to negotiate his position that the claim was unsecured.

[8] The Court has considered whether petitioners might be entitled to a deduction for a loss under sec. 165(a). Sec. 165(c)(2) provides generally that, in the case of an individual, the deduction for a loss shall be limited to "losses incurred in any transaction entered into for profit, though not connected with a trade or business". In Spring City Foundry Co. v. Commissioner, 292 U.S. 182 (1934), the Supreme Court held that the predecessors of secs. 165 and 166 are mutually exclusive in that a bad debt, although a loss, cannot be deducted under the
(continued...)

The final issue for decision is whether petitioners are liable for the accuracy-related penalty under section 6662(a) for negligence or disregard of rules or regulations.  Section 6662(a) provides for an addition to tax equal to 20 percent of the portion of the underpayment to which the section applies.  Under section 6662(c), "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard."  Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985).  Under section 6664(c), the penalty under section 6662(a) shall not be imposed with respect to any portion of the underpayment if it is shown that there was reasonable cause for the underpayment, and that the taxpayer acted in good faith.

Petitioners claimed Schedule C deductions in the amount of $25,226 with respect to an activity of petitioner's that neither had commenced nor was being conducted on a regular and continuous basis during the year at issue.  Petitioners also claimed a $12,500 bad debt deduction for a debt that they reported as a

---

[8](...continued)
general loss provisions of sec. 165.  Therefore, petitioners here cannot obtain any relief under sec. 165.  Moreover, no identifiable event occurred to fix the amount of any loss so as to render it deductible under sec. 165.

debt arising out of a trade or business activity when the debt was clearly related to property held for the production of income.

At trial, petitioner contended he was not negligent or in disregard of rules or regulations for 1990 in claiming he was engaged in a trade or business activity because he relied on a position that was taken by the Internal Revenue Service (IRS) in the audit of his 1983 tax return.  For 1983, petitioner had reported a trade or business activity based on a Schedule C filed with his return, and the IRS did not challenge that his activity was a trade or business.  Petitioner did not submit to the Court a copy of his 1983 return or the IRS audit report for his 1983 tax year but submitted a "Statement of Change To Your Account", dated April 7, 1986, which he received from the IRS that indicated an increase in tax for 1983 in the amount of $399 and interest charged of $96.23, for a total amount of $455.23, which the statement acknowledged as having been paid.  Petitioner's claim of reliance for purposes of the negligence penalty is not substantiated.  The record of this case indicates that the principal nature of petitioner's trade or business during 1983 may well have been the commodity trading strategy and manual that petitioner was promoting at that time.  Petitioner acquired the Bridgewater, New Jersey, property sometime during 1983 and first sought a variance to build a three-family house on the property

in 1984.  The Court concludes from this that petitioner's expenses relating to his Bridgewater property during 1983, which he may well have claimed on a 1983 Schedule C of his return, were minimal, and the trade or business expenses he claimed that year related to his commodity futures activity, which the IRS may have recognized as a trade or business activity.  Petitioner could not have justifiably relied on this IRS position for the 1990 tax year because the Schedule C for the 1990 tax year did not involve any expenses relating to the commodity futures activity but only involved expenses relating to development of the Bridgewater and Clinton, New Jersey, properties and the $12,500 bad debt deduction relating to the Knoxville, Tennessee, properties.  The factual circumstances of 1990, therefore, were totally different from petitioner's 1983 activity.  The Court, therefore, rejects petitioner's contention that he relied on the position taken by respondent on his 1983 return.  With respect to the $12,500 bad debt deduction claimed on Schedule C of petitioners' 1990 return, petitioner knew that his debt related solely to the Knoxville, Tennessee, properties.  Petitioner knew that the rental income and expenses of these properties did not constitute a trade or business activity for purposes of section 162(a) because he reported the rental income and expenses from these properties on Schedule E of his return, thus correctly treating these properties as properties held for the production of income.

Petitioner knew or should have known that the same treatment or characteristic of the $12,500 debt applied; yet, he erroneously attributed it to a purported trade or business activity.  The Court, therefore, sustains respondent on the section 6662(a) penalty.

<u>Decision will be entered</u>

<u>for respondent.</u>